# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TOIA PRICE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION  15-0476-WS-M |
| | ) |
| DISH NETWORK, LLC, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for partial summary judgment. (Doc. 27). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 27, 30, 35), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, the defendant made multiple unsolicited telephone calls to the plaintiff's cell number, apparently in an effort to reach one of its customers. The defendant continued to do so even after the plaintiff informed the caller they had the wrong number and asked them not to call her again. At least some of the calls were made using an automated telephone dialing system, and at least some of them employed an artificial and/or pre-recorded voice. None of the calls was made for an emergency purpose or with the plaintiff's prior consent. Count One asserts violations of the Telephone Consumer Protection Act ("the Act"), while Count Two asserts a state-law claim for invasion of privacy. (Doc. 1-1 at 1-7).

The parties agree there is a universe of fourteen specific calls potentially involved in this lawsuit. (Doc. 27 at 5-6; Doc. 30 at 1-2). The plaintiff agrees with the defendant that summary judgment should be granted in favor of the defendant on Count Two. (*Id*. at 8). The plaintiff also agrees with the defendant that summary judgment should be granted in favor of the defendant on Count One with respect to calls 1, 3 and 7 through 14. (*Id*. at 2, 8). Thus, only calls 2, 4, 5 and 6 remain. The defendant seeks summary judgment with respect to calls 2, 4 and 5, but not call 6. (Doc. 27 at 4).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); accord *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a

genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1]  Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").  "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

**I. Liability.**

"It shall be unlawful for any person within the United States … to make any call (other than a call made for emergency purposes or with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).  Count One is based on alleged violations of this provision.  (Doc. 1-1 at 5).

The defendant argues that calls 2, 4 and 5 were not made using an automatic telephone dialing system ("ATDS"), an artificial voice, or a prerecorded voice.  The plaintiff counters that these calls were made using an ATDS.[2]

"The term 'automatic telephone dialing system' means equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  The defendant asserts that the equipment it uses does not have this capacity.  (Doc. 27 at 9, 15).  Its evidence in support of this proposition is confined to a single, conclusory sentence from the affidavit of its business operations manager:  "The Cisco Dialer does not have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."  (Doc. 27-2 at 3).  As the defendant's own authority states, such an *ipse dixit* is inadequate as a matter of law.  *See Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369, 373 (3rd Cir. 2015) (expert's affidavit testimony that the equipment "did not have the capacity to store or produce numbers to be called, using a random or sequential number generator, and to call those numbers," was only a "restating of the

---

[2] It appears to be uncontroverted that the system employed by the defendant does not use an artificial voice.  (Doc. 27 at 9).  It also appears to be uncontroverted that the system would or could use a prerecorded voice but that this feature was activated only when a call was answered by a human voice.  (*Id*. at 9-10, 15).  As to calls 2, 4 and 5, there was no answer and thus no use of a prerecorded voice.  (*Id*. at 7, 10, 15).  The Court assumes this is why the plaintiff relies solely on the ATDS angle in opposing summary judgment as to these calls.

statutory definition amount[ing] to nothing more than a legal conclusion couched as a factual assertion"). Because the defendant has not carried its initial burden, its motion must be denied, and the plaintiff's showing need not be considered. *Mullins*, 228 F.3d at 1313; *Fitzpatrick*, 2 F.3d at 1116; *Clark*, 929 F.2d at 608.

The defendant acknowledges that, in addition to the strict language of Section 227(a)(1), "the FCC has expanded the definition of an ATDS to include calling equipment having as its basic function the capacity to dial numbers without human intervention." (Doc. 27 at 15).[3] The defendant seeks to negate this means of showing an ATDS with its affiant's statement that "[h]uman intervention was involved in all aspects of making Call Nos. 2, 4, and 5." (Doc. 27-2 at 3; Doc. 27 at 9, 15). The statement fails to carry the defendant's initial burden for several reasons.

First, the affiant's statement is as conclusory a parroting of a legal standard as is his denial that the equipment satisfies the specific language of Section 227(a)(1). Second, the defendant acknowledges that the standard is whether the equipment has the *capacity* to dial numbers without human intervention, yet the affiant does not address capacity but only the actual events surrounding three particular telephone calls.

Even had the defendant carried its initial burden with respect to the FCC gloss, in its reply brief the defendant injects excerpts from the affiant's deposition that contradict his affidavit. According to the witness's deposition, the equipment (not any human) "select[s] the phone number and press[es] the keyboard." (Doc. 35-1 at 3). Since selecting the phone number and pressing the keyboard are presumably "aspects of making" calls, the defendant has controverted its own evidence.

---

[3] The defendant notes that the FCC's order is on appeal but does not ask the Court, on that or any other basis, to ignore the order as a potential basis of liability. The time to make such a request has now passed for all purposes in this litigation.

**II. Treble Damages.**

Section 227(b)(3) extends discretion to the Court to award treble damages "[i]f the court finds that the defendant willfully or knowingly violated this subsection …." The defendant argues that, even if it is subject to liability under the Act, it is not subject to treble damages. (Doc. 27 at 16).

The defendant asserts that treble damages may be awarded only as to calls "made after the caller was put on explicit notice that the caller was calling the wrong number." (Doc. 27 at 16). The defendant relies on what its affiant calls "DISH's internal Account Memos for DISH's customer account" ("Memos") for a particular period. (Doc. 27-2 at 4). The defendant points to an entry from August 18, 2015 stating that "NON DISH CUSTOMER KEEPS GETTING CALLS IN REGARDS THIS ACCT." (Doc. 27-7 at 2). The defendant says it "first learned" it was calling the plaintiff rather than its customer on this date. (Doc. 27 at 10, 16).[4] Because calls 2, 4 and 5 all occurred before August 18, 2015, (*id*. at 7), the defendant concludes it cannot be exposed to an award of treble damages. (*Id*. at 16).

Once again, the defendant's presentation does not satisfy its initial burden on motion for summary judgment. The defendant has offered no affidavit supporting counsel's insistence in brief that the defendant "first learned" it was calling the wrong number on August 18; instead, the defendant simply invites the Court to assume that, since August 18 is the earliest date its records *reflect* its awareness, August 18 must be the earliest date it *possessed* such awareness. That may be one reasonable inference from the defendant's evidence, but it is not the only one; it is equally plausible that the defendant knew previously that it was calling the wrong number but simply failed to make a notation to that effect. Thus, the defendant's evidence does not negate an element of the plaintiff's case for

---

[4] According to the defendant, the customer's cell number was erroneously entered in the defendant's records as the plaintiff's number. (Doc. 27 at 1, 6).

treble damages and so does not carry the defendant's initial burden. As a consequence, its motion for summary judgment as to treble damages must be denied.

Even had the defendant met its initial burden, the plaintiff's evidence would create a genuine issue of material fact. According to the plaintiff's evidence, she received a call on July 31, 2015 from a gentleman calling "to confirm the service call" regarding "satellite television apparatus." The plaintiff told him, "I'm not this person. Please remove my number from the account." (Doc. 27-3 at 6-7). This is call 1, (Doc. 27 at 7), so it preceded calls 2, 4 and 5.

In its reply brief, the defendant points out that this call was not made from the toll-free number associated with calls 2, 4 and 5 but from (251) 287-0517. (Doc. 35 at 10; Doc. 27 at 7). The defendant then notes that, according to its affiant, "DISH does not own, use, or control the telephone number 251-287-0517," has "never made a telephone call from" this number, and "does not know to whom the '0517 number … belongs." (Doc. 27-2 at 3). Moreover, the defendant notes that calls 2, 4 and 5 were for installation, not service, so the purpose of call 1 is inconsistent with the purpose (per the affiant) of the calls from the defendant's toll-free number. (Doc. 35 at 11). Finally, the plaintiff did not testify that the caller identified himself as a DISH representative. (*Id*. at 10-11).

The defendant's evidence and argument, however, could not eliminate the fact issue raised by the plaintiff's evidence even had the defendant not already lost its motion for failure to meet its initial burden. The caller may not have identified himself as associated with DISH, but he did call regarding "satellite television apparatus," which pretty well narrows the field of possible entities. The caller may have discussed a "service" appointment as opposed to an "installation" appointment, but this hardly raises an eyebrow, given that Memos reflects the customer had been a customer since at least February 2013 and that the customer in fact received a "technician visit" on August 14, 2015 after his "refusal to troubleshoot." (Doc. 27-7 at 3, 11). Memos also draws into question the affiant's

denial of any connection between (251) 287-0517 and the defendant, since it reflects that, on July 31, 2015 (the day of call 1), a "service call" was "cancelled per customer request." (*Id*. at 3). Perhaps it is just coincidence that the plaintiff received a call on July 31 confirming a satellite TV service call while the defendant's internal records reflect the customer cancelled a satellite TV service call on the same date, but the evidence supports an inference that the caller on call 1 was sufficiently associated with the defendant that his knowledge constitutes the defendant's knowledge.

### III. Plaintiff's Request for Summary Judgment.

The Magistrate Judge established a deadline for filing dispositive motions of April 15, 2016, later extended to May 20, 2016. (Docs. 12, 25). The plaintiff, unlike the defendant, filed no dispositive motion. Instead, embedded within her response filed June 17, 2016 is a request that the Court enter summary judgment in her favor with respect to call 6. (Doc. 30 at 7-8). The request is procedurally improper, both because it is not in the form of a motion[5] and because it was made long after the deadline for seeking such relief.[6] Accordingly, the defendant's motion to strike the plaintiff's request, (Doc. 36), is **granted**.

---

[5] "A request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1).

[6] "We recognize that district courts enjoy broad discretion in deciding how best to manage the cases before them." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). The Eleventh Circuit has repeatedly employed this rule to uphold trial courts' enforcement of deadlines. *E.g., School Board of Collier County v. K.C.*, 285 F.3d 977, 981-82 (11th Cir. 2002) (untimely expert testimony); *Enwonwu v. Fulton-DeKalb Hospital Authority*, 286 Fed. Appx. 586, 595 (11th Cir. 2008) (untimely motion for summary judgment); *Edman v. Marano*, 177 Fed. Appx. 884, 886 (11th Cir. 2006) (untimely request for mental examination); *cf. Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."). The underlying principles are clear. "[I]n order to ensure the orderly administration of justice, [a trial court] has the authority and responsibility to set and enforce reasonable deadlines." *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002). Accordingly, "[d]eadlines are not

## CONCLUSION

For the reasons set forth above, the defendant's motion for partial summary judgment is **granted** as to Count Two and **granted** as to Count One with respect to calls 1, 3 and 7 through 14. In all other respects, the defendant's motion is **denied**.[7]

DONE and ORDERED this 13th day of July, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

meant to be aspirational," and a litigant does not "ha[ve] carte blanche permission to perform when he desires." *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004).

[7] From the Court's perspective, neither side has reason to be confident of its position in this litigation. The Court expects both sides to exhibit substantially more facility with the evidence and especially with the governing law should this case proceed to trial.